Amos A. Jenks, administrator of Lintze Ver Duin, deceased,

*v.*

Peter Breen, executor of Cornelia Ver Duin, et al.

A husband gave his wife a life estate in all he had, with remainder in fee to his children, and appointed her and B. executors. She never proved the will, but continued his business, and contracted debts therein, and died.— *Held,* that B. was entitled to all she left, in preference to her administrator or creditors.

*Mr. T. C. Simonton, Jr.,* for complainants.

*Mr. R. Williams,* for defendants.

Bird, V. C.

Cornelius Ver Duin died March 3d, 1883, in possession of a grocery business, leaving a wife and three sons, one of whom was an infant. He left a last will and testament, in and by which he directed that all his debts should be paid, and in and by which he gave to his wife, the said Lintze, all the remainder of his estate during the term of her natural life, and, after her death, he gave the same to his children and to their heirs and

assigns forever. He appointed his wife executrix and Peter Breen, one of the defendants, executor. The will is dated December 28th, 1876. At the time of his death, he was indebted about the sum of $700. The will was not proved by Mrs. Ver Duin, nor did she take any steps to reduce the property of her late husband to lawful possession. However, she took possession, and carried on the business until she died, on April 5th, 1884. She had assisted her husband in the management of the concern during his lifetime, and perhaps thereby became well acquainted with it. It was all conducted in her own name. At his death, the stock of goods did not exceed $500 in value. But she seems to have acquired a credit, and to have done considerable business. One firm, who are complainants, sold to her about $2,900 worth of goods, and at the time of her death, she was indebted to it $358. She was indebted to others about $475.

One of the defendants, Peter Breen, proved said will after the death of Mrs. Ver Duin, and took possession of all the goods in the store, valued at about $476, and all the assets which were of Cornelius Ver Duin at the time of his death, and also $950 in cash, $850 of which was gold. From all this he realized $1,780.71. He still retains possession of all which he has not disbursed in payment of debts and the settlement of the estate. But Mrs. Ver Duin left no estate, unless it is to be found in that which the executor of her husband has in his possession. As intimated, she left creditors, and they are in pursuit of a portion, if not all, of the assets held by the executor. They procured Mr. Jenks, one of the complainants, to be appointed to administer her estate. He and the complainants, who are creditors, join in a suit against the executor, and pray for a discovery of assets and of expenditures, and that he may be ordered to surrender all moneys and goods to said administrator.

Question: As the case stands, who is entitled to possession of the said assets and to administer them? First, to go back, in whom was the title at the time of the death of the husband? It is admitted that he carried on the business in his own name, and exercised all the control of an absolute owner up to the time of his death. He obtained a credit in that business, and

when he died was indebted on account of goods purchased therefor. There is no proof of any act or claim of ownership on the part of Mrs. Ver Duin before her husband's death. Everything would seem to indicate that his ownership was not only perfect but undisputed.

Therefore, I must conclude that Mrs. Ver Duin had no title except such as devolved upon her by the will of her husband. And, as is above stated, this she never attempted to establish, although it secured to her a life interest in all the assets of her husband. Her neglect to perfect the transmutation by lawful process cannot enure to the benefit of others who have not been deceived.

Mrs. Ver Duin's administrator can have no better title than she had. He takes through her. This is plain enough. But the complainants claim that an equity arises in their favor because of these facts: When Mr. Ver Duin died he was indebted to several in about $700, and to Crosby & Sons, who are complainants, $233.83. This last sum Mrs. Ver Duin paid. She also paid other creditors of Mr. Ver Duin. The whole amount so paid was $488.88. It is said with the goods on hand she obtained a credit which otherwise would not have accrued to her.

As to the equity arising out of these simple facts, I think very clearly Mrs. Ver Duin was entitled to a credit for the amount of money ($488.88) which she advanced towards the payment of her husband's debts. It was her duty to pay these debts, if she claimed at all under her husband's will. It is true she had not protected herself by clothing herself with the habiliments of a trustee as provided by law, but where no fraud is intended equity will treat such transactions as fiduciary. Therefore the defendant, the executor, must be charged with the $488.88.

These conclusions would seem to dispose of the whole case, but the complainants go beyond a merely equitable claim and insist, as a matter of fact, in strict law, that the complainant, the administrator, is entitled to the $850 which, it is asserted, were in the possession of Mrs. Ver Duin at her death, and to which she directed attention just before that event. The witness who speaks upon the subject, says:

Ver Duin *v.* Ver Duin.

"I nursed her in her last sickness, and was present at the time of her death; a short time before her death she was looking for her money; I said, ' What are you doing?' I said 'Shall I get it for you?' She said, ' Yes, that money is to pay my debts with;' then I took hold of her and helped her in her bed, and as I helped her in her bed and covered her up she was gone; before this happened I did not know she had any money; I afterwards hunted for and found that money; Mr. Breen, the executor, was with me."

This declaration, and the alleged fact that she had possession of the money, are the grounds on which the complainants rest their claim. I cannot perceive that such declarations are in any sense admissible or relevant to establish title to property under such circumstances, unless made in the presence of the person who afterwards disputes the claim, but at the time acquiesces therein. If such testimony is to have the force of proof, then can creditors easily find relief, and posterity secure a fortune. The alleged fact of possession is as feeble in its influence upon the question of title as the dying declaration. She had no more possession of the gold than of the horse or the household furniture or the store goods. The horse and furniture passed to the executor beyond dispute. The husband and wife, during the last years of their lives, occupied different beds in different rooms, and the money was found in the room and bed occupied by the husband. This branch of the argument also seems to be against the complainants.

But, to go further, there is not the slightest proof to show that the gold was, in fact, ever Mrs. Ver Duin's. It nowhere appears that she had any estate of her own. Some attempt was made to show that she might have acquired such an estate, but it seems to me that no foundation whatever has been laid for a decree. Nor can I find a sentence in the proofs that would warrant the faintest presumption. It cannot be pretended that she amassed this gold during the thirteen months she survived her husband, in doing a business on a capital of less than $500, and also discharged debts of his to the amount of $488.88.

But again, it is said that these creditors of Mrs. Ver Duin gave her credit for goods which have gone into the estate. This is so; but the proof is that the amount of stock on hand at her death was not greatly in excess of the amount bequeathed to her by

Ver Duin v. Ver Duin.

her husband.   If they have contributed anything of value to the estate now in the possession of the executor, I have not been able to trace it.

It ought to be observed that these creditors do not and cannot claim under mistake or fraud.   They had full knowledge.   They dealt with Mr. Ver Duin in his lifetime, and had claims against him at the time of his death.   They had the law to protect them. They could have compelled an administration upon his assets, and it was their duty to have done so, rather than to have encouraged the confusion which has followed.   Instead of demanding their rights, they allowed Mrs. Ver Duin to treat all of the assets as her own.   Now, in the midst of the uncertainty which they have created, if any one suffers loss, the court will prefer to let it fall on those who joined in provoking the uncertainty, rather than upon the innocent remaindermen.

I can see no reason for giving her estate credit for more than the $488.88, the amount of the debts of her husband which she paid.   This, indeed, may be going a great way, for there is nothing to show that she added to the estate ; and it is possible that this $488.88 should be considered as part of the capital fund, rather than profits, and therefore her own.   Of this sum, the executor has already paid, on account of the estate of Lintze Ver Duin, $309.30, which he paid in ignorance of his duty. Why did he pay her creditors?   He was not the executor of her estate.   It seems to me that the court can only help him to the extent of the proportion of the $488.88, which will be due to the creditors of Mrs. Ver Duin, to whom he paid the $309.30. I express no opinion as to his right to recover the excess from the persons to whom he made such voluntary payments—of course, if he paid preferred claims he will be allowed them in full.

I will advise a decree in accordance with these views.   Neither party is entitled to costs as against the other.